In re H. Roger LAWLER, et al.

H. Roger LAWLER, Appellant,

v.

LOMAS & NETTLETON FINANCIAL CORPORATION, Appellee.

Civ. A. No. 3–86–2119–H.

United States District Court,
N.D. Texas,
Dallas Division.

Feb. 17, 1989.

---

C. Thomas Wesner, Jr., Wesner Coke Boyd & Clymer, Dallas, Tex., for appellant.

Larry M. Lesh, Lock Purnell Rain Harrell, Dallas, Tex., for appellee.

## MEMORANDUM OPINION AND ORDER

SANDERS, District Judge.

Before the Court are Lomas & Nettleton's ("L & N") Brief, filed October 21, 1988; Lawler's Response, filed November 10, 1988 and L & N's Reply, filed November 21, 1988.

The facts and history of this case are clearly set out in this Court's Memorandum Opinion and Order dated March 27, 1987. *See also Lawler v. Lomas & Nettleton Mortgage Investors*, 50 B.R. 110 (Bankr.N.D.Tex.1985) ("*Lawler I*"); *Matter of Lawler*, 807 F.2d 1207 (5th Cir.1987). Most recently, the Fifth Circuit affirmed in part and remanded in part this Court's March 27th Opinion. The Circuit Court held: "Thus we remand for the district court to reconsider and to articulate its calculation of L & N's deficiency judgment. We express no opinion on the correctness or incorrectness of the amount of the judgment as it presently stands." *Lawler v. Lomas & Nettleton Financial Corp.*, No. 87–1316,

slip op. at 11 [849 F.2d 1470 (table)] (5th Cir. June 16, 1988) (per curiam).

The Circuit Court directed this Court to consider five points: (1) whether Lawler received a proper credit for the state court judgment finding the original 607 note[1] usurious (specifically whether the credit from this judgment should have been subtracted from L & N's claim *prior* to the calculation of attorney's fees and other charges); (2) whether L & N still has control over $140,000 of the 607 loan in an escrow account, and whether this amount should be subtracted from the deficiency; (3) whether L & N's claim improperly included pre-petition interest; (4) whether the interest on loans 607 and 1126[2] was wrongly calculated so that Lawler was overcharged $1,939.26 and $1,038.30, respectively; and (5) whether L & N's per diem calculation is based on a total that includes all of the alleged inappropriate charges.

### 1. *Credit for the State Court Judgment*

In 1977 the 101st Judicial District Court of Dallas County, Texas (No. 77–6783–E) found that L & N had charged usurious interest on the original 607 note between 1972 and 1975. The Court awarded Lawler the sum of $237,423.04 plus interest and attorneys' fees, all of which were to be "offset against" L & N's claim in the Lawler bankruptcy proceeding. L & N's Brief at 4. The Texas Supreme Court affirmed the judgment. *Lawler v. Lomas Nettleton Mortgage Investors*, 691 S.W.2d 593 (Tex. 1985). While the Supreme Court held that the original loan was usurious, the 607 renewal loan was not. "The Court of Appeals erred in treating all the transactions as a single obligation." 691 S.W.2d at 596.

The Bankruptcy Judge later took the bankruptcy deficiency amount of $4.8 million[3] and gave full credit on the original 607 note judgment (including $15,000 in

---

**1.** The original 607 loan for $400,000.00 was executed in 1972 by the Lawler Family Trusts and was extended in 1975 by the Lawler Corporation. L & N Brief at 2, App. G, H.

**2.** Loan 1126 for over 2 million dollars was executed by the Lawler Corporation in 1973. In

1975, L & N purchased the note from Mercantile Safe and Deposit Company. L & N Brief at 2, App. G, H.

**3.** $4,828,345.44.

attorney's fees), which had been accumulating interest. The Judge then assessed 10% attorneys' fees on the unpaid balance, providing for a total allowed claim of $4,804,-342.05 on January 31, 1986. Order dated February 5, 1986, Schedule A.

Lawler disputes the above calculation, arguing that the credit should have been given pre-foreclosure.[4] The Texas Supreme Court did not affirm the lower court's decision until 1985. At that time, it made no finding concerning pre-foreclosure crediting. It appears that the state court thus disposed of the issue of pre-foreclosure credit. This Court is not willing to modify a state court decision[5] but simply affirms the offset of the judgment amount and its accumulated interest[6] against the bankruptcy deficiency.

Lawler's second dispute with the judgment credit centers on the fact that attorneys' fees of 10% were added to the balance. Lawler's Brief at 5. Because the attorney fee calculation by the Bankruptcy Court was made *after* the judgment credit,[7] Lawler cannot argue that he was charged fees in the collection of that amount.[8] The Fifth Circuit also addressed the 10% attorney fee charge and held that:

> "the district court did not err in affirming the bankruptcy court's ruling that, with respect to the notes on which L & N collected in this proceeding L & N was entitled to attorney's fees at the ten-percent rate stipulated in the notes themselves ... This [the district court's] analysis is fully persuasive and, we think, should end the discussion on this issue."

No. 87–1316 at 7 [849 F.2d 1470 (table)]. Given the above conclusion, this Court finds it unnecessary to further review three previous discussions of the 10% attorney fee issue.

## 2. *The Escrow Account.*

Lawler claims that he was deprived of credit for a $140,000 escrow fund which had been established to complete a road on the property encumbered by the 607 deed of trust. L & N's Brief at 3. This Court has no evidence to suggest that the Bankruptcy Court mistakenly ignored such a fund. References in the parties' briefs suggest that testimony at the trial on the May 1977 application (for relief from the automatic bankruptcy stay) concerned the existence of such an account. The July 1977 Order following that trial, however, makes no mention of an escrow account. The Fifth Circuit's Opinion approved the Bankruptcy Court's January 23, 1986, *Lawler* II, determination that the July 1977 Order barred "Lawler's defenses on the principles of res judicata ... [T]he 1977 Judgment decided finally the value of the property securing loans 607, 1667, and 1126–1998." No. 87–1316 at 9 [849 F.2d 1470 (table)].

Lawler argues that it was the bankruptcy court in 1986 that should have recognized the escrow claim and that Lawler appealed that 1986 decision. True enough, the 1986 Opinion made no mention of the escrow account but neither did Lawler's appeal since the escrow claim was not reviewed as a point of appeal in this Court's March 1987 Opinion. Now, more than ten years after the valuation of property securing the loans, Lawler demands that this Court credit him with the mysterious escrow funds. This Court finds that there is no evidence to suggest that the bankruptcy court made a clearly erroneous error in failing to credit Lawler with $140,000.

---

**4.** Foreclosure was first authorized on April 29, 1977. Properties were sold in 1977 and in 1979. 50 B.R. at 111.

**5.** *California Liquor Dealers Association v. Midcal Aluminum, Inc.*, 445 U.S. 97, 111, 100 S.Ct. 937, 946, 63 L.Ed.2d 233 (1980) ("Court accords 'respectful consideration and great weight to the views of the state's highest court' on matters of state law").

**6.** As proposed by the Bankruptcy Court in its February 5, 1986 Order, following its January 23, 1986 decision ("*Lawler* II") which was affirmed by this Court on March 27, 1987.

**7.** Order dated February 5, 1986, Schedule A.

**8.** Additionally, the collection of attorneys' fees on the 607 *renewal* note is proper since that loan was not found usurious by the Texas Supreme Court.

3. *Pre-petition Interest.*

Lawler's pre-petition interest argument is that the allowed amount of L & N's claim improperly included interest which accrued prior to the commencement of the Lawler bankruptcy proceeding. Lawler suggests that the confirmed plan fixed the rights of L & N and did not provide for attorneys' fees or pre-petition interest.[9]

Under Section 63 of the Bankruptcy Act, however, creditors were entitled as a matter of law to pre-petition interest. 3 Collier Bankruptcy ¶ 63.16 (14th Ed.1964). The Act considered the instrument (note) amount *with* interest to be "a fixed liability."

Additionally, Texas law governs the determination of the principal amount of L & N's claim. *Butner v. U.S.,* 440 U.S. 48, 55–56, 99 S.Ct. 914, 918–19, 59 L.Ed.2d 136 (1979). Under Texas law, past due interest becomes principal and bears interest, without any stipulation to that effect. *Bothwell v. Farmers and Merchants State Bank & Trust Co.,* 120 Tex. 1, 30 S.W.2d 289, 291 (1930). This rule is applicable regardless of whether L & N treated interest as principal. *Texas Commerce Bank–Arlington v. Goldring,* 665 S.W.2d 103, 104 (Tex.1984) (The Texas Supreme Court "held that a commitment fee ... was not interest even though the lender referred to it as interest). Thus, this Court finds that L & N was not overcharging Lawler by including pre-petition interest as part of the owed debt.

4. *Interest Overcharge.*

Lawler's interest overcharge defense is that the bankruptcy claim included interest on pre-petition interest, L & N explains that the 607 renewal note and the 1126 note provided that delinquent installments of principal and interest would bear interest at the rate of 18% per annum. L & N's Brief at 3. L & N argues that it charged Lawler less than the due amounts by $228,396.82 on the 1126 note and $11,015.66 on the 607 renewal note. L & N's Brief App. H.

Given the Court's finding that the Bankruptcy Court properly allowed the claim of pre-petition interest and the fact that L & N charged Lawler less than the collectible amounts due on the loan, Lawler's interest overcharge argument is without merit.

5. *Per diem calculation.*

Having carefully considered arguments on the four preceding points and explained why Lawler's contentions are without merit, the Court now finds that because the proof of claim order properly allowed the claims made, the per diem accrual of interest is also correct. No basis exists for its reconsideration.

*Conclusion*

Pursuant to the Fifth Circuit's mandate, the Court has reconsidered and explained its calculation of the amount of L & N's deficiency claim. The Court is of the opinion that the judgment of the Bankruptcy Court dated January 23, 1986 was correct. The Court again AFFIRMS that decision.

SO ORDERED.

---

**9.** The plan provided for the payment of "the full principal amount of "claims, together with in- terest on said claims from January 9, 1986." L & N's Reply at 5–6.